| | |
|---|---|
| From: | LFGNotifications@LFG.com |
| Sent: | Wednesday, April 5, 2023 10:17:30 AM |
| To: | JOHN@FARMERDREISER.COM; |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]The Dow Chemical Company Claim No. 10419522 Michael Gilmore |
| Attachments: | 83fl4ma7roteplcn8mzw_14975853.pdf; |

---

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

EXHIBIT

**2**

**Lincoln/Gilmore 0072**

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (800) 291-0112
Secure Fax No.: (603) 334-0380

April 5, 2023

John Dreiser
Law Firm of Tony Farmer & John Dreiser
1356 PAPERMILL POINT WAY
KNOXVILLE, TN 37909

RE: Long Term Disability (LTD) Benefits
The Dow Chemical Company
Claim #: 10419522
Claimant: Michael Gilmore

Dear John Dreiser:

We reviewed Mr. Gilmore's appeal request for Long Term Disability ("LTD") benefits and maintain the decision to deny benefits beyond November 8, 2022.

**Initial Claim Decision**

Mr. Gilmore submitted a claim for his absence from work as of May 9, 2020, as a result of diabetes mellitus type 2 with peripheral neuropathy. His LTD benefits began on November 9, 2020, therefore the change in definition of disability occurred on November 9, 2022, and to receive benefits beyond 24 months he must be disabled from any occupation as defined in the Policy. Benefits beyond November 8, 2022 were denied as the evaluation concluded he was no longer disabled as defined by the Policy.

The basis for the decision was outlined in a letter dated August 17, 2022. Mr. Gilmore was provided an opportunity to request an appeal review of the denial, stating the reasons why he felt that his claim should not have been denied, and submit additional information to support his claim. Specifically, he was advised to submit the following information: Please include the following documentation: all office treatment notes, diagnostic test results, consultation reports, procedure notes, physical therapy records or any other medical records from Dr. Barber and Dr. Hairston, and any other treating providers from July 1, 2022, to the present. Please also include pharmacy records from July 1, 2022 to the present; physician documentation of specific restrictions and limitations, including how they preclude you from performing the material and substantial duties of your any occupation and the medical documentation to support them); as well as any other information which you feel would support your claim. You should also provide any additional information that you feel will support your claim.

## Appeal

In your letter of appeal dated February 7, 2023, you indicated Mr. Gilmore's is unable to work due to his diabetes with peripheral neuropathy in feet and legs and must take frequent breaks due to pain.

In support of Mr. Gilmore's claim, you submitted information from various medical providers from November 28, 2016, through February 22, 2023.

## Appeal Evaluation

During the claim evaluation of ongoing benefits, Mr. Gilmore's claim was reviewed by Dr. Craig H. Rosenberg, an independent physician who is board certified in Physical Medicine & Rehabilitation. Based on her review of the medical records, Dr. Craig H. Rosenberg concluded:

*Based upon discussion with Dr. Barber and Mariah Hall Phillips, P.A. from Dr. Hairston's practice, review of records, the current scientific literature and standards of care, current reasonable supported restrictions include:*

- *Frequent sitting or sitting as tolerated.*
- *Occasional standing.*
- *Occasional walking.*
- *Occasional lift and carry up to 10 lbs.*
- *Occasional bending.*
- *Occasional squatting, kneeling, and crouching.*
- *No climbing ladders and occasional climbing stairs with a handrail.*
- *No limitation with reaching.*
- *Frequent fingering and gripping.*
- *Occasional means up to 33% of the time or 20 minutes out of every hour.*
- *Frequent means up to 66% of the time or 40 minutes out of every hour.*
- *Available records reviewed do not reflect the inability to work for 8 hours per day within the above listed restrictions and limitations.*
- *Time frames: Duration supported from 11/09/2020 to present and likely permanent. The claimant has a diabetic polyneuropathy with poorly controlled type 2 diabetes mellitus. The condition was confirmed with electrodiagnostic testing (NCV/EMG) on 06/03/2020. As a result, standing balance is impaired, and during the discussion, Mariah Hall Phillips, P.A. noted that the claimant reported experiencing recurrent falls due to poor balance.*

Mr. Gilmore's claim was reviewed by a vocational consultant, for a transferrable skills analysis based on Mr. Gilmore's prior work history, educational background, and/or life experience and capacity within the restrictions and limitations outlined by Dr. Craig H. Rosenberg. The analysis showed Mr. Gilmore's would have the ability to perform the following occupations:

| **Occupation** | **National Monthly Wage** |
|---|---|
| Order Department Supervisor- Sedentary | $6,640 |
| Personnel Scheduler- Sedentary | $4,004 |
| Production Coordinator- Sedentary | $4,004 |

Repair Order Clerk- Sedentary $4,004

During the review of Mr. Gilmore's appeal, his claim was reviewed by Dr. Andrew Nava, an independent physician who is board certified in Physical Medicine & Rehabilitation Pain medicine. Based on his review of the medical records, Dr. Andrew Nava concluded:

*"The medical records indicate the primary impairing diagnoses are diabetic type peripheral polyneuropathy and low back pain. The records reasonably support medical restrictions and limitations from present and likely permanent of:*

*Frequent sitting or sitting as tolerated.*
*Occasional standing.*
*Occasional walking.*
*Occasional lift and carry up to 10 lbs.*
*Occasional bending.*
*Occasional squatting, kneeling, and crouching.*
*No climbing ladders and occasional climbing stairs with a handrail.*
*No limitation with reaching.*
*Frequent fingering and gripping.*
*Occasional means up to 33% of the time or 20 minutes out of every hour.*
*Frequent means up to 66% of the time or 40 minutes out of every hour.*
*The clinical information in the records does not preclude performing usual activities which are within the above restrictions and limitations, including activities related to employment."*

*The determination of this report is that the claimant has no evidence of a functional impairment due to lack of recent progress notes as described above. Therefore, the conclusions of this report are different from the conclusions in the review by Dr. Craig Rosenberg.*

On March 14, 2023, we provided you with a copy of the above assessment. The purpose of this letter and enclosure was to provide you with an opportunity to review and comment on new/ additional evidence that has been received before a decision is rendered on Mr. Gilmore's appeal. We asked that you provide your response no later than March 30, 2023.

We received your response requesting that Dr. Nava was available for an examination. We responded and declined your request to depose Dr. Nava as this demand is outside the scope of ERISA for Mr. Gilmore's appeal. No additional information was received in response to the peer review.

Based on our review, which included an independent peer review, we conclude the information contained in Mr. Gilmore's claim file supports restrictions and limitations. These restrictions and limitations would not preclude Mr. Gilmore from the alternative occupations previously identified. No further benefits are payable.

**<u>Conclusion</u>**

We conducted a thorough and independent review of Mr. Gilmore's entire claim. In summary, we acknowledge that he may have continued to experience some symptoms associated with his condition beyond November 8, 2022. However, the information does not contain exam findings,

diagnostic test results or other forms of medical documentation supporting his symptoms and impairments remained of such severity, frequency and duration that they resulted in restrictions or limitations rendering him unable to perform the duties of the occupations identified as being with in his functional capacity and vocational skills after that date.

Having carefully considered all of the information submitted in support of his claim, our position remains that proof of his continued disability in accordance with the Policy provisions November 8, 2022, has not been provided. Therefore, no further benefits are payable.

This claim decision reflects an evaluation of the claim facts and Policy provisions.

**Policy Provisions**

In order to continue receiving benefits, you must satisfy the requirements of all Policy provisions that state, in part:

*Notice and Proof of Claim*

1. *Notice*

*a. Notice of claim must be given to Lincoln within 30 days of the date of the loss on which the claim is based. If that is not possible, Lincoln must be notified as soon as it is reasonably possible to do so. Such notice of claim must be received in a form or format satisfactory to Lincoln.*

*b. When written notice of claim is applicable and has been received by Lincoln, the Covered Person will be sent claim forms. If the forms are not received within 15 days after written notice of claim is sent, the Covered Person can send to Lincoln written Proof of claim without waiting for the forms.*

2. *Proof*

*a. Satisfactory Proof of loss must be given to Lincoln no later than 30 days after the end of the Elimination Period.*

*b. Failure to furnish such Proof within such time shall not invalidate or reduce any claimif it was not reasonably possible to furnish such Proof within such time. Such Proof must be furnished as soon as reasonably possible, and in no event, except in the absence of legal capacity of the claimant, later than one year from the time Proof is otherwise required.*

*c. Proof of continued loss, continued Disability or Partial Disability, when applicable, and Regular Attendance of a Physician must be given to Lincoln within 30 days of the request for such Proof.*

*Lincoln reserves the right to determine if the Covered Person's Proof of loss is satisfactory.*

*LONG TERM DISABILITY COVERAGE*

*Disability Benefit*

*When Lincoln receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, Lincoln will pay the Covered Person a Weekly Benefit after the end of the Elimination Period, subject to any other provisions of this policy. The benefit will be paid for the period of Disability if the Covered Person gives to Lincoln Proof of continued:*

*1. Disability;*

*2. Regular Attendance of a Physician; and*

*2. Appropriate Available Treatment.*

*The Proof must be given upon Lincoln's request and at the Covered Person's expense. In determining whether the Covered Person is Disabled, Lincoln will not consider employment factors including, but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification.*

*The Policy states that to be eligible for benefits you must meet the definition of disability as defined in the LTD Policy:*

*"Disability" or "Disabled", with respect to Long Term Disability, means:*

*1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:*

*i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*

*ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

*"Appropriate Available Treatment" means care or services which are:*

1. *generally acknowledged by Physicians to cure, correct, limit, treat or manage the disabling condition;*

2. *accessible within the Covered Person's geographical region;*

3. *provided by a Physician who is licensed and qualified in a discipline suitable to treat the disabling Injury or Sickness;*

4. *in accordance with generally accepted medical standards of practice.*

*"Material and Substantial Duties" means responsibilities that are normally required to*

*perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.*

*"Own Occupation", with respect to Long Term Disability, means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Lincoln will consider the Covered Person's occupation as it is normally performed in the national economy.*

*"Any Occupation" means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.*

*"Regular Attendance" means the Covered Person's personal visits to a Physician which are medically necessary according to generally accepted medical standards to effectively manage and treat the Covered Person's Disability or Partial Disability.*

*Discontinuation of the Long Term Disability Benefit*

*The Monthly Benefit will cease on the earliest of:*

*1. the date the Covered Person fails to provide Proof of continued Disability or Partial Disability and Regular Attendance of a Physician;*

*2. the date the Covered Person fails to cooperate in the administration of the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.*

*3. the date the Covered Person refuses to be examined or evaluated at reasonable intervals;*

*4. the date the Covered Person refuses to receive Appropriate Available Treatment;*

*9. the date the Covered Person is no longer Disabled according to this policy;*

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, he was entitled to appeal the decision made by Lincoln Financial Group, and to submit any additional information he wished to be considered as part of the appeal. Lincoln Financial Group has conducted a full and fair review of his appeal and accompanying materials, and has concluded that the denial of benefits will be maintained.

At this time, his administrative right to review has been exhausted; no further review will be conducted by Lincoln Financial Group and his claim will remain closed. You may request to receive, free of charge, copies of all documents relevant to his claim. You have the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

If his plan is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact his local U.S. Department of Labor Office or his state insurance regulatory agency. In addition, once all required reviews of his claim have been completed, you have the right to bring a civil action under applicable law. His employer's plan has a contractual limitations period of 3 year(s), which means that a

lawsuit must be brought within 3 year(s) after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is November 8, 2026.

This information is provided for purposes of this claim only, as the time proof of claim is required may differ based on claim specifics and applicable policy language.

Nothing in this letter should be construed as a waiver of any Lincoln Financial Group of Boston rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Decisions made by Lincoln Financial Group are based on the provisions outlined in The Dow Chemical Company's Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. No internal rules, guidelines, protocols, standard or other similar criteria were relied upon in rendering the claim determination.

If you require language translation assistance, please contact Lincoln Financial Group to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł nínízingo saad hosíníłį́į' dóó ná'ookąąh níiní'ą́ągo naaltsoos níiníłtsoozígíí hazho'ó bik'idi'deeshtį́įł nínízingo doo bą́ąh ílínígóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Nakeshia Killian
Disability Claims Case Manager
Phone No.: (800) 291-0112 Ext. 14074
Secure Fax No.: (603) 334-0380